# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDWARD VOCCOLA,                    :
    Plaintiff,                    :
                             :        **CIVIL ACTION NO.:**
**v.**                            :
                             :        **3:13-CV-01002 (VLB)**
BRIAN ROONEY, JAMES GRACE,         :
WILLIAM FINCH, and CITY OF         :        **September 22, 2015**
BRIDGEPORT,                        :
    Defendants.                   :

## MEMORANDUM OF DECISION GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Edward Voccola, a former Bridgeport firefighter who was fired from his position purportedly for pouring acid into his elderly neighbors' water system, brings this civil rights action and supplemental state law claim against the City of Bridgeport ("municipal defendant") and its Mayor, Fire Chief, and Deputy Fire Chief (collectively, "individual defendants"). Voccola alleges that: (1) the individual defendants violated his equal protection rights by firing him because he is white, by creating a hostile work environment consisting of the panoply of protections afforded to him prior to being fired, and by firing him in retaliation for complaints of "unfair treatment"; (2) the individual defendants violated his due process rights by firing him before his criminal proceedings concluded and by forcing him to offer incriminating testimony during an internal investigation; (3) the municipal defendant acted with deliberate indifference to the constitutional violations; and (4) this treatment constituted intentional infliction of emotional distress. The defendants move for summary judgment. For the following reasons, summary judgment is entered for the defendants.

## Factual Background

The following facts, which are undisputed unless otherwise noted, are drawn from the record.[1]  Voccola is Caucasian/white.  Dkt. No. 40-6 (Voccola Dep.) at 117:12.  From 1988 until his termination in February 2011, Voccola worked as a firefighter for the City of Bridgeport.  *Id.* at 6:10–22, 119:6–10.  On September 5, 2010, the Shelton Police began investigating an incident involving Voccola.  Dkt. No. 40-8 (Incident Report) at 1.  Voccola's neighbors, who had ongoing problems with Voccola based on their belief that he had dumped motor oil on their property several years earlier, called the police because their video surveillance camera captured Voccola pouring an unidentified substance into their water filtration system.  *Id.* at 1–2.  The police searched Voccola's property where they found three gallon-sized containers of muriatic acid.  *Id.* at 3.  The containers contained the following warning label: "DANGER (skull and crossbones symbol) POISON."

---

[1] Culling the factual background from the record was complicated by the defendants' failure to comply with Local Rule of Civil Procedure 56(a)(3): many numbered paragraphs contain multiple statements of fact, many individual statements of fact (and even some paragraphs containing multiple statements of fact) are not followed by a citation to the record, and many citations to the record do not include specific paragraphs or pages.  These deficiencies are sufficient grounds for denying the motion.  *See* Local Rule of Civil Procedure 56(a)(3) ("[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in . . . denying the motion for summary judgment."); *Tross v. Ritz Carlton Hotel Co. LLC,* 928 F.Supp.2d 498, 503–04 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion.").  Even after Voccola alerted the defendants to these errors, the defendants, by and through their counsel John Richard Mitola, made no remedial efforts.  The Court grants summary judgment in the defendants' favor, but the following colorfully memorable admonishment bears repeating for future reference: "Judges are not like pigs, hunting for truffles buried in the record."  *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) (quotation marks and alterations omitted).

*Id.* Voccola admitted to dumping a mix of chemicals including muriatic acid into his neighbors' water supply system but professed that he was just "a good Samaritan" who "wanted to clean [his neighbors'] fitting for them." *Id.* at 4. Voccola was arrested and charged with second-degree attempted assault of an elderly person and first-degree reckless endangerment. *Id.* at 5.

Defendant Brian Rooney, the Bridgeport Fire Chief, learned about Voccola's alleged criminal activity on September 7, 2010. Dkt. No. 40-3 (Rooney Aff.) at ¶¶ 3, 5. The defendants' maintain, and Voccola disputes, that the allegations concerned Rooney because he believed that such serious charges would discredit the Fire Department and degrade the public trust if proven true. *Id.* at ¶ 5. Rooney ordered Defendant James Grace to place Voccola on administrative leave pending an investigation. *Id.* at ¶ 6. Defendant Grace, an African-American male, serves as the Bridgeport Deputy Fire Chief. Dkt. No. 40-5 (Grace Aff.) at ¶¶ 3–4. On September 8, 2010, Grace sent Voccola a letter informing him that he had been placed on paid administrative leave as of September 7 because he had been charged with attempted assault and reckless endangerment. Dkt. No. 40-9 (Leave Letter). The defendants' maintain, and Voccola disputes, that Defendant Rooney was worried about conducting an investigation without proper assistance because the matter concerned serious criminal allegations. Dkt. No. 40-3 (Rooney Aff.) at ¶ 7. Rooney asked Defendant William Finch to refer the matter to the Office of Internal Affairs ("OIA"). *Id.* Finch, a Caucasian male who serves as the Bridgeport Mayor, agreed. Dkt. No. 40-4 (Finch Aff.) at ¶¶ 3–4, 7.

Before the investigation began, Voccola was informed that he would be required to answer questions because the proceedings were being conducted for administrative purposes only.  Dkt. No. 40-11 (OIA Report) at 190.  A nonparty in the Bridgeport Police Department conducted the investigation by, *inter alia*, reviewing the incident report, the neighbors' water quality logs, and photographic evidence.  *See generally id.*  The investigation also included interviews of one of the two neighbors, the manager of the trailer park where the incident occurred, and Voccola.  *See generally id.*  During Voccola's interview, he was represented by his union president and union legal counsel.  *Id.* at 71.  At the start of the interview, Voccola was informed that:

> [T]his interview is for administrative purposes only and as a public servant, you're obligated to answer questions relevant to your employment.  Any and all statements made by you during the course of this interview cannot be utilized in any criminal proceedings which may be currently pending or may be initiated against you regarding this investigation. [These are] your *Garrity* rights.

*Id.* at 72.  Voccola confirmed that he understood these rights.  *Id.*  During his interview, Voccola was given the "opportunity to defend himself, provide whatever information [he] wanted to provide, to present [his] side of the story."  Dkt. No. 40-6 (Voccola Dep.) at 45:6–14.   The investigation concluded on December 7, 2010, and the final report found that it would be "reasonable to consider" Voccola to have violated the following preexisting rules, regulations, and ordinances: (1) engaging in activities that might interfere with the efficient discharge of one's duties; (2) using obscene, profane, or disrespectful language; (3) <u>resorting to unlawful violence</u>; (4) conduct of a disorderly nature or neglect of duty which is prejudicial to the good order and discipline of the Fire Department;

(5) failure to adhere to "Policies, Rules and Regulations, Chiefs orders, Directives, Operational Procedure Guidelines, and Form Directives of the Department/City"; (6) failure to comply with the Fire Chief's orders; (7) indecent, inappropriate, or immoral conduct; and (8) unethical conduct.  Dkt. No. 40-11 (OIA Report) at 195–96.

The report was forwarded to Defendant Finch on December 21, 2010, Dkt. No. 40-4 (Finch Aff.) at ¶ 8, and Finch thereafter forwarded the report to Defendant Rooney, Dkt No. 40-3 (Rooney Aff.) at ¶ 10.  After reviewing the report, Rooney charged Voccola with all the violations considered reasonable pursuant to the report, except a failure to comply with the Fire Chief's orders.  *Id.* at ¶¶ 11–12. Voccola was sent a letter on January 18, 2011, and that letter informed him that a due process hearing would be held on January 24, 2011 for the purpose of addressing the alleged violations.  Dkt. No. 40-12 (Notice of Hr'g) at 12.  Voccola requested a 30-day continuance, Dkt. No. 40-13 (Letter), but Defendant Rooney granted him a continuance of only one week, Dkt. No. 40-14 (Letter).

An administrative hearing was held on January 31, 2011.  Dkt. No. 40-15 (Hr'g Tr.).  Prior to the hearing, Voccola and his legal representatives were given the complete OIA investigative report and all other pertinent evidence for review. Dkt. No. 40-3 (Rooney Aff.) at ¶ 15.  During the hearing, Voccola was again represented by his union president and union legal counsel.  Dkt. No. 40-15 (Hr'g Tr.) at 1.  At the time of the hearing, Voccola was aware that his testimony could not be used against him during his ongoing criminal proceedings, i.e., he was aware of his rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its

5

progeny.  Dkt. No. 40-6 (Voccola Dep.) at 95:12–17.  Defendant Rooney never threatened Voccola with termination if he failed to testify during the hearing.  *Id.* at 94:5–10.  During the hearing, Voccola (either of his own accord or through his union representative or lawyer) had the ability to present evidence to refute the charges.  *Id.* at 87:23–88:5; *see generally* Dkt. No. 40-15 (Hr'g Tr.).  Voccola primarily attempted to do so by arguing that he lacked any intent to harm his neighbor by pouring muriatic acid into his water filtration system.  Dkt. No. 40-15 (Hr'g Tr.) at 9 ("[W]hat [Voccola] did was to put the chemical on, we're not disputing that, but there was no intent to harm at all.").

The defendants' maintain, and Voccola disputes, that Rooney terminated Voccola's employment on February 8, 2011 because Voccola "blatantly violated the Rules of Regulations of the Department and the City of Bridgeport" and his disciplinary file includes numerous instances of "excessive absenteeism."  Dkt. No. 40-7 (Termination Letter) at 1–2.  Voccola's termination letter observed that "the incident became a media event" because Voccola told the police that he was a Bridgeport Firefighter.  *Id.* at 1.  Moreover, the letter stated that "[i]t's absurd for you or anyone to think that pouring Muriatic Acid on your neighbor's [sic] water system without permission was an act of kindness after ongoing problems with them for several years."  *Id.* at 1.

During this entire process, Voccola never filed a complaint against, or made a complaint to, the individual defendants.  Dkt. No. 40-6 (Voccola Dep.) at 111:21–112:16.  The individual defendants were not aware of any of Voccola's unspecified complaints.  Dkt. Nos. 40-3 (Rooney Aff.) at ¶ 22; 40-4 (Finch Aff.) at

¶ 13; 40-5 (Grace Aff.) at ¶ 16.

Voccola operates under the assumption that he was treated unfairly because of his race and color. Dkt. No. 40-6 (Voccola Dep.) at 108:13–17. He formed this opinion based on the fact that other non-Caucasian/non-white employees were, in his opinion, similarly situated and treated more favorably. *Id.* at 108:24–109:8. Voccola seeks to compare himself to Defendant Grace, Harold Clark, Joel Christy, Ronald Reed, Allen Jones, Maurice Barnes, and Phillip Rosa, all of whom are either African-American or Hispanic.[2] Dkt. No. 44-1 (Opp'n) at 8–11. For the sake of clarity, the following bullet points state what the allegedly similarly situated person did and what punishment he received:

- <u>Defendant Grace</u> was accused of showing up to work visibly intoxicated on three occasions in 2009. Defendant Grace received a written warning. Dkt. No. 40-18 (Grace Discipline Letter).

- <u>Harold Clark</u> was found guilty of driving with a suspended license in 2012. He received a thirty-day suspension without pay. In 2010, he was issued a verbal warning for not responding to a Hazardous Material Spill. In that same year, he received a verbal warning for insubordination. In 2008, he received a verbal warning for submitting an incomplete form. Twice in 2007 and once in 2005, he was counseled regarding his unexcused absences. In 2002, he tested positive for cocaine and was not punished. Dkt. No. 40-19 (Clark Discipline Letter).

- <u>Joel Christy</u> was found guilty in 2013 of spreading "Rumors & Malicious Gossip" and behavior that disrupts the work environment based on his unfounded complaints of harassment and a hostile work environment. He was issued a verbal warning. In 2008, Christy was found guilty of being disrespectful to a superior officer. Christy was suspended for one day without pay. In 1997, he was found guilty of <u>unlawful violence</u> based on an incident where Christy told his supervisor "we'll settle this outside" and "I'm going to punch you in the face!" and repeatedly struck his supervisor in the chest. He received a thirty-day suspension

---

[2] Hispanic provides no indication of race or color. The Court nonetheless assumes that Rosa, the only Hispanic individual, had a race and color different from Voccola because it does not affect the outcome of the case.

**without pay.  Dkt. No. 40-20 (Christy Discipline Letter).**

- <u>**Ronald Reed**</u> **pleaded guilty in state court to misdemeanor reckless endangerment and misdemeanor criminal mischief, but there were no allegations of violence.  He received a nondisciplinary counseling memorandum.  Dkt. No. 40-21 (Reed Counseling Memo.).**

- <u>**Allen Jones**</u> **was arrested for violating a restraining order involving his niece, but there were no reports of violence.  Jones received a written warning for violating two rules regarding: (1) using obscene, profane, or disrespectful language and (2) conduct of a disorderly nature or neglect of duty which is prejudicial to the good order and discipline of the Fire Department.  Dkt. No. 40-28 (Jones Discipline Letter).**

- <u>**Maurice Barnes**</u> **engaged in unspecified unlawful conduct while on duty but was either not punished as severely as Voccola or not at all.  Dkt. No. 44-6 (Plaintiff Interrogatory).  The record contains no evidence regarding the existence of Maurice Barnes other than Voccola's unsupported response to the defendants' interrogatory, and there is no evidence concerning Barnes's underlying conduct.**

- <u>**Phillip Rosa**</u> **was convicted in state court of operating under the influence of liquor or drugs.  He was terminated.  He was not charged with any internal policy respecting unlawful violence.  Rosa also had previous arrests, but the Fire Department did not know about those arrests or underlying conduct.  Dkt. No. 40-30 (Rosa Discipline Letter).**

<u>**Legal Analysis**</u>

**Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587**

(1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A plaintiff opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).  "At the summary judgment stage of the proceeding, [a plaintiff is] required to present admissible evidence in support of [his] allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F.Supp.2d 28, 37 (D. Conn. 2011).  In other words, a plaintiff opposing summary judgment must produce more than "a 'scintilla of evidence,'" i.e., the evidence must be sufficient for "'a jury to properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"  *Fincher v. Depository Trust & Clearance Co.*, 604 F.3d 712, 726–27 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251–52).

I.    <u>Equal Protection Claims</u>

The Fourteenth Amendment protects public employees from race/color[3]

---

[3] **Voccola uses these two terms interchangeably, and the Court follows likewise.  However, the Court notes that "[e]ven though race and color clearly overlap, they are not synonymous."  *See* EEOC, Facts About Race/Color Discrimination, *available at* http://www.eeoc.gov/facts/fs-race.html (last visited Sept. 10, 2015).**

discrimination and retaliation for complaining about race/color discrimination.[4] *Vega v. Hempstead Union Free Sch. Dist.*, 2015 WL 5127519 at *8, *12 (2d Cir. Sept. 2, 2015). Public employees may bring such claims in a 42 U.S.C. § 1983 action against "any responsible persons acting under the color of state law." *Id.* at 12. Where, as here, there is no dispute over whether the defendants acted under the color of state law, "a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (internal quotation marks omitted). Voccola's equal protection claims against the individual defendants are predicated on three theories: wrongful termination, hostile work environment, and retaliation.[5] The memorandum addresses each theory in turn.

### A. Wrongful Termination Process

Voccola alleges that his termination process, i.e., paid leave, an investigation, a hearing, and eventual termination, occurred because he was Caucasian/white. Dkt. No. 1 (Compl.) at ¶¶ 1, 33. This entire process constitutes a single discrete act, *see Johnson v. District of Columbia*, 49 F.Supp.3d 115, 120–

---

[4] The Fourteenth Amendment also protects against ethnicity discrimination and retaliation for complaining about ethnicity discrimination. The Court, however, does not construe Voccola to making such claims. Despite using the word ethnicity in his complaint, Voccola does not identify an ethnicity, Dkt. No. 1 (Compl.), and admits that he is not claiming that he was discriminated against because of his ethnicities, Dkt. No. 40-6 (Voccola Dep.) at 79:8–12.

[5] The defendants construe Voccola to be raising a class-of-one claim because he compares himself to other white employees. Dkt. No. 40 (Mot.) at 35–38. The Court disagrees because the complaint alleges that all similarly situated employees were "either not of the plaintiffs race and color, or did not complain to the defendants, or both." Dkt. No. 1 (Compl.) at ¶ 32. In any event, the defendants correctly argue that such a claim would fail on the merits. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008) ("We hold that such a 'class-of-one' theory of equal protection has no place in the public employment context.").

21 (D.D.C. 2014), and as such is analyzed under the familiar burden-shifting rules of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993).  Under this framework, a plaintiff must first make out a *prima facie* case by producing evidence that: "(1) he is a member of a protected class; (2) he was qualified for the position . . . ; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010).  If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the [defendant] to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).  If the defendant provides such a reason, the plaintiff must produce evidence showing that "the real reason for plaintiff's termination was his race."  *Ruiz*, 609 F.3d at 492.  In other words, "the [plaintiff's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [defendant's] employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

The individual defendants move for summary judgment, arguing that Voccola cannot produce evidence showing that the adverse action took place under circumstances giving rise to the inference of discrimination: Voccola produced no evidence of an individual who engaged in conduct of "comparable seriousness."  Dkt. No. 40 (Mot.) at 23–30.  The individual defendants "concede"

the first three elements of a *prima facie* case.[6]  *Id.* at 23.  They further argue that they have produced evidence of a nondiscriminatory rationale (his underlying criminal conduct violated internal regulations) and that Voccola cannot show that this rationale is pretextual.  *Id.* at 30–35.  Voccola opposes on the ground that the jury should decide whether the other individuals were similarly situated because it would be reasonable for a jury to conclude that the individuals engaged in comparably serious conduct.   Dkt. No. 44-1 (Opp'n) at 17–36.

Disparate treatment is "the most common way to create an inference of discrimination."  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).  "As a number of courts in this Circuit have observed, although the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict."  *Graham v. Elmira City Sch. Dist.*, 2015 WL 1383657, at *5 (W.D.N.Y. Mar. 25, 2015) (internal quotation marks and alteration omitted).  A plaintiff relying on this method of proof must show that the comparator is similar "in all material respects."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 370 (2d Cir. 2003).  "What constitutes 'all material respects' . . . varies," but a court must consider "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.

---

[6] Despite this concession, the defendants argue that Defendants Finch and Grace did not cause Voccola to suffer an adverse employment action, element three of a *prima facie* case.  *See, e.g.*, Dkt. No. 40 (Mot.) at 32 ("[P]laintiff cannot claim that Grace's actions of placing him on paid administrative leave constituted an adverse employment action.").   The Court does not address this argument because of the above-noted concession.

2000). Whether the comparators are similarly situated is ordinarily a question of fact for the jury, *id.* at 39, but "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Summary judgment is appropriate here because none of the suggested comparators engaged in conduct that a reasonable person could consider as serious as attempting to poison an elderly person. And the reason is simple: with one exception, the comparators' conduct was not intentionally violent. Visible intoxication, driving without a license, failure to fill out a form completely, testing positive for illicit substances, unexcused absences, insubordination, failure to respond, spreading rumors and gossip, reckless endangerment, and driving under the influence are not acts of violence done with the intent to cause physical harm to another person. The evidence concerning Jones's and Reed's underlying conduct indicates that their respective conduct does not involve a crime of intentional violence. *See* Dkt. Nos. 40-21 (Reed Letter); 40-28 (Jones Letter). Voccola also attempts to compare himself to Barnes, who Voccola identifies in an interrogatory, but Voccola, who bears the ultimate burden of proof of trial, has produced no record evidence of Barnes's underlying conduct to rebut the defendants' supported assertion that Voccola's situation is not similar to any of the other employees.

The only person alleged to have engaged in intentionally violent conduct is Christy, but his conduct is much less serious. Christy's conduct involves a heat-of-the-moment spat with a coworker. Christy told his supervisor "we'll settle this

13

outside" and "I'm going to punch you in the face!" and repeatedly struck his supervisor in the chest.  This conduct is categorically different from Voccola's attempted assault of an elderly person during which Voccola introduced muriatic acid into the water supply: Christy's spat was not premeditated; the potential for serious injury was less likely and pertained only to a single individual; and the intended victim was not an elderly person.  Christy's conduct, like the conduct of the other potential comparators, cannot be considered in the same league as Voccola's conduct.  Without being able to identify a similarly situated individual, Voccola cannot demonstrate a *prima facie* case.  Because the evidence of a causal connection between the termination process and Voccola's race/color is so weak, he also cannot demonstrate that the individual defendants' nondiscriminatory rationale, which was supported by record evidence, was pretext.  *See Olorode v. Streamingedge, Inc.*, 2014 WL 1689039, at *17 (S.D.N.Y. Apr. 29, 2014) ("Because [the plaintiff's] evidence of discrimination is insufficient to make out a prima facie showing, it is undoubtedly insufficient to satisfy the third step of the *McDonnell Douglas* test.").  Accordingly, summary judgment is entered for the defendants on Voccola's equal protection claims predicated on a discrete discriminatory act.

### B.  Hostile Work Environment

Voccola alleges that the individual defendants subjected him to a "hostile [work] environment" by placing him on administrative leave, conducting an internal investigation, holding a disciplinary hearing, and subsequently terminating him.  Dkt. No. 1 (Compl.) at ¶ 34.  A hostile work environment requires

a plaintiff to provide evidence demonstrating, *inter alia*, that the complained of conduct "was sufficiently severe or pervasive to alter the conditions of the victim's employment." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (internal quotation marks omitted).  The individual defendants argue, in relevant part, that the complained of conduct was not sufficiently severe.   Dkt. No. 40 (Mot.) at 18–20.  Voccola does not oppose.

The individual defendants are correct.  No reasonable person would believe that these conditions created a hostile working environment because paid leave, investigations, and hearings are rights, not abusive burdens.  *Cf.   Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("We agree that an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner.").   Moreover, the events are insufficient to establish a workplace permeated with racial discrimination because "the allegedly discriminatory acts were all part of an isolated disciplinary incident."  *Johnson*, 49 F.Supp.3d at 120–21 (dismissing hostile work environment claim).  Accordingly, summary judgment is entered for the defendants on Voccola's equal protection claims predicated on a hostile work environment theory.

### C. Retaliation

Voccola alleges that he was fired in retaliation for "complain[ing]" of "unlawful and unfair" treatment.   Dkt. No. 1 (Compl.) at ¶¶ 20–21, 25, 33. Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting test described above.  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir.

2010).   A *prima facie* claim requires proof of a protected activity, an adverse employment action, and a causal connection between the two events.   *Id.*   Once the employee meets his initial burden, the burden shifts to the employer to offer proof of a legitimate, nondiscriminatory reason for its adverse employment action.   *See McDonnell Douglas,* 411 U.S. at 802.   If the employer offers proof of a neutral explanation, the employee must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."   *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

The individual defendants argue that Voccola cannot provide proof of a causal connection: Voccola admits that the individual defendants were unaware of his complaints.   Dkt. No. 40 (Mot.) at 17–18.   Voccola does not oppose.   The individual defendants are correct.   There is no evidence tending to show that the individual defendants were aware of Voccola's unspecified complaints of unfair treatment.   Voccola never filed a complaint against, or made a complaint to, the individual defendants.   Dkt. No. 40-6 (Voccola Dep.) at 111:21–112:16.   The individual defendants were not aware of any of Voccola's unspecified complaints. Dkt. Nos. 40-3 (Rooney Aff.) at ¶ 22; 40-4 (Finch Aff.) at ¶ 13; 40-5 (Grace Aff.) at ¶ 16.   Voccola therefore cannot prove a causal connection between his unspecified complaints and any of the actions taken by the individual defendants. Accordingly, Voccola's equal protection claims predicated on a theory of retaliation are dismissed to the extent that Voccola intends his admissions to constitute consent to their dismissal.   To the extent that Voccola did not intend to consent to their dismissal, summary judgment is entered for the defendants on

Voccola's equal protection claims predicated on a theory of retaliation.

## II.   Due Process Claims

Voccola's allegations concerning due process are less than clear, but it appears that he believes that his procedural due process rights were violated because the individual defendants conducted an internal investigation into his alleged criminal conduct without waiting until his criminal proceeding concluded. Dkt. No. 1 (Compl.) at ¶¶ 11–12, 19, 22.   Even assuming that Voccola had a protected property interest in his employment, he was entitled only "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (holding that placing employee on leave without pay pending resolution of serious criminal charges does not violate due process).   Voccola does not allege that he was deprived of these protections, and the record demonstrates that he received them.   *See* Dkt. Nos. 40-12 (Notice of Hr'g) at 12; 40-3 (Rooney Aff.) at ¶ 15 (averring that Voccola was given evidence prior to the hearing); 40-6 (Voccola Dep.) at 87:23–88:5 (testifying that he was permitted the opportunity to present his side of the story).   Voccola's procedural due process claims therefore fail because "[d]ue process simply did not require [an employer] to delay its 'just cause' determination until after [a state] jury decided whether the prosecutor proved, beyond a reasonable doubt, that [employee's] conduct satisfied the elements of criminal assault under [state] law.   *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 936-37 (8th Cir. 2012).

17

The gist of Voccola's due process claim actually implicates his Fifth Amendment privilege against self-incrimination, which is applicable to the states through the Due Process Clause.  In his complaint, Voccola curiously alleges that "[w]hen [he] attempted to invoke his *Garrity* rights at the hearing, defendant Rooney threatened him with termination."  Dkt. No 1 (Compl.) at ¶ 20.  As an initial matter, Voccola admits that this never happened, Dkt. No. 40-6 (Voccola Dep.) at 94:5–10, and the hearing transcript bears out this concession, *see generally* Dkt. No. 40-15 (Hr'g Tr.).  Even assuming that Voccola had been forced to testify under the threat of losing his job, such compulsion would have been entirely appropriate: "the Constitution permits that very testimony to be compelled if neither it nor its fruits are available for such use [in a criminal trial]." *Lefkowitz v. Turley*, 414 U.S. 70, 84 (1973); *see also Maness v. Meyers*, 419 U.S. 449, 473 (1975) (White, J., concurring) ("[A] witness may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him.").  The record shows that Voccola was twice assured that the internal investigation was conducted for administrative purposes only and that the investigation and the statements made in course of the investigation could not be used against him in his criminal proceedings.  *See* Dkt No. 40-11 (OIA Report) at 72–73, 190.  Further, Voccola admitted to understanding that "anything [he] said to OIA and anything that [he] said at [his] due process hearing could not be used again[st] [him] in [his] criminal matter."  Dkt. No. 40-6 (Voccola Dep.) at

95:12–17.  Accordingly, summary judgment is entered for the Defendants on Voccola's due process claims.

III.    *Monell* Claims

The complaint asserts that the individual defendants' actions "evidence an official policy or custom [of the municipal defendant] which has caused [Voccola] to be subjected to a denial of one or more of his constitutional rights."  Dkt. No. 1 (Compl.) at ¶ 37.  A municipality may be sued under § 1983 if its policy or custom inflicts constitutional injury.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694  (1978).  This rule also applies when a municipality's failure to adopt a policy or custom demonstrates deliberate indifference to the violation of the plaintiff's constitutional rights.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  However, a *Monell* claim is generally foreclosed where a plaintiff has suffered no constitutional violation at the hands of an individual defendant.  *See Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008).  In such cases, a plaintiff's *Monell* claim survives only if "the injuries complained of are not solely attributable to the actions of named individual defendants," *Barrett v. Orange County Human Rights Comm'n,* 194 F.3d 341, 350 (2d Cir.1999), or summary judgment is entered for the defendants on immunity grounds, *see Curley v. Vill. of Suffern,* 268 F.3d 65, 71 (2d Cir. 2001).

The municipal defendant moves for summary judgment in its favor as to Voccola's *Monell* claims, arguing that it cannot be held liable because Voccola has no valid claims against the individual defendants.  Dkt. No. 40 (Mot.) at 42.  Voccola does not substantively respond to the defendants' argument that

summary judgment must enter in the absence of the individual defendants' liability; he merely asserts that the claims against the municipal defendant should survive because he has provided evidence warranting consideration by a jury. Dkt. No. 44-1 (Opp'n) at 35–38.  Voccola does not identify the evidence upon which he relies and does not state how a reasonable jury could find for him on the basis of the evidence on the record.   *Id.*  Because, as discussed above, the claims against the individual defendants do not survive summary judgment, the *Monell* claims also do not survive summary judgment.  No exception to the rule mandating summary judgment applies here: the Court has not addressed qualified immunity, and Voccola has not claimed any independent violation of his constitutional rights.   Accordingly, summary judgment is entered for the defendants on Voccola's *Monell* claims.

## IV.   Intentional Infliction of Emotional Distress Claims

Voccola alleges that his discrimination claims also constitute claims for intentional infliction of emotional distress under Connecticut common law.  Dkt. No. 1 (Compl.) at ¶¶ 35–39.  Under Connecticut law, a claim for intentional infliction of emotional distress has four elements: (1) "the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct"; (2) "the conduct was extreme and outrageous"; (3) "the defendant's conduct was the cause of the plaintiff's distress"; and (4) "the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000).

The defendants argue only that the record evidence is insufficiently outrageous and extreme to warrant consideration by a jury.  Dkt. No. 40 (Mot.) at 41–42.  Extreme and outrageous conduct "exceeds all bounds usually tolerated by decent society." *Appleton,* 254 Conn. at 210–11.  "There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action as the court must look to the specific facts and circumstances of each case in making its decisions."  *Menon v. Frinton,* 170 F.Supp.2d 190, 198 (D. Conn. 2001) (internal citations and quotation marks omitted).

In the workplace, the threshold for demonstrating extreme and outrageous conduct is higher: "[i]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." *Perodeau v. Hartford,* 259 Conn. 729, 757 (2002).  "Generally, personnel actions or workplace conduct that falls within the reasonably expected vicissitudes of employment, . . . including insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings, even if unlawful, are usually not deemed extreme and outrageous conduct." *Craig v. Yale Univ. Sch. of Med.*, 838 F.Supp.2d 4, 10 (D. Conn. 2011).

As an initial matter, Voccola may not rely on allegations of race discrimination to support his claims for intentional infliction of emotional distress.  As discussed above, his discriminations claims have no record support.  Further, discrimination is not *per se* extreme and outrageous. *Sangan v. Yale Univ.*, 2006 WL 2682240, at *5 (D. Conn. Sept. 15, 2006).  ("Although

conduct alleged to be sexual harassment and/or discrimination on the basis of a plaintiff's protected status often gives rise to a claim for IIED, the coexistence of the two claims does not establish that sexual harassment and/or discrimination is *per se* extreme and outrageous.").   Other than pointing to his unsupported allegations of race discrimination, Voccola does not identify any specific conduct constituting outrageous behavior.  Dkt. No. 44-1 (Opp'n) at 39 (arguing summarily that "the conduct of the defendants articulated by plaintiff, including race discrimination, clearly constitute extreme and outrageous behavior").  And that's because no such outrageous conduct occurred.  As explained above, paid leave, investigations, and hearings are rights, not abusive burdens.  *Cf. Joseph*, 465 F.3d at 91.  Accordingly, summary judgment is entered for the defendants on Voccola's claims for intentional infliction of emotional distress.

## Conclusion

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment.  The Clerk of Court is directed to enter judgment in the defendants' favor and to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Order dated in Hartford, Connecticut on September 22, 2015